**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re Application Of

ISLAND GLOBAL YACHTING LLC

Petitioner, For An Order Pursuant To
28 U.S.C. § 1782 To Obtain Discovery
For Use In A Foreign Proceeding

Case No.   1:26-mc-00053

**ECF Case**

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, New York 10022
(212) 446-4800

*Attorneys for Petitioner*
*Island Global Yachting LLC*

February 6, 2026

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

I.      IGY and the Sale Transaction ............................................................................... 3

II.     Island Capital Bribes IGY Executives ............................................................... 3

III.    The English Court Proceeding ............................................................................ 5

IV.    Discovery from Island Capital Will Aid IGY's Foreign Proceeding Against Jones .......... 7

LEGAL STANDARD ........................................................................................................ 9

ARGUMENT .................................................................................................................... 10

I.      IGY's Application Satisfies the Statutory Requirements. ................................. 10

      A.     Island Capital "Resides" in the Southern District of New York ........................... 11

      B.     IGY Seeks Discovery "For Use" in the English Proceeding. ............................... 12

      C.     IGY Is an "Interested Person" under Section 1782. ................................ 14

II.     The Discretionary Factors Strongly Favor Discovery. .................................... 15

      A.     Island Capital Is Not a Participant in the English Proceeding. ........................... 15

      B.     Courts in the United Kingdom Are Receptive to Section 1782 Relief. ................ 15

      C.     IGY's Application Comports with Proof-Gathering Restrictions in the United Kingdom ........................ 16

      D.     IGY's Narrow, Targeted Discovery Requests Are Neither Unduly Intrusive nor Unduly Burdensome. ................. 18

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                       **Page(s)**

*Ex parte Abdalla*,
   No. 20-MC-0727, 2023 WL 2911047 (S.D.N.Y. Apr. 12, 2023)...........................................18

*In re Abraaj Inv. Mgmt. Ltd.*,
   No. 20-MC-229, 2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) ...........................................10

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)...........................................................................................................14

*AG v. Bauman*,
   571 U.S. 117 (2014).......................................................................................................................11

*In re Application of Salem*,
   No. 24-MC-0005,
   2024 WL 3026670 (S.D.N.Y. June 17, 2024) ...........................................................................17

*Azima v. Citibank, N.A.*,
   No. 22-MC-0072,
   2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022)...........................................................................16

*BANOKA, S.à.r.l. v. Alvarez & Marsal Inc.*,
   No. 22-MC-0182,
   2024 WL 1242994 (S.D.N.Y. Mar. 22, 2024) ..........................................................................13

*In re Batbold*,
   No. 21-MC-0218,
   2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021) ......................................................................16, 17

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017).......................................................................................................................11

*In re Bourlakova*,
   No. 24-MC-0071, 2024 WL 4839047 (S.D.N.Y. Nov. 20, 2024) ..............................12, 13, 14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)..............................................................................................................9

*In re Children's Inv. Fund Found. (UK)*,
   363 F. Supp. 3d 361 (S.D.N.Y. 2019).........................................................................................11

*In re CI Invs. Inc.*,
   No. 23-MC-0434,
   2023 WL 8643965 (S.D.N.Y. Dec. 14, 2023) ...........................................................................16

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)............................................................................10

*Ecoprivate Bus. Ltd. v. Clearing House Payments Co. LLC*,
   No. 23-MC-232,
   2023 WL 4848516 (S.D.N.Y. July 28, 2023) ..................................................11, 14

*In re Ernesto Andrade Grp.*,
   712 F. Supp. 3d 438 (S.D.N.Y. 2024).............................................................11, 15

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
   27 F.4th 136 (2d Cir. 2022) ........................................................................9, 15, 16

*In re Fund for Protection of Inv. Rights in Foreign States*,
   No. 19-MC-0401,
   2020 WL 3833457 (S.D.N.Y. July 8, 2020) ...........................................................18

*Gushlak v. Gushlak*,
   486 Fed. App'x 215 (2d Cir. 2012).......................................................................10

*In re Hansainvest Hanseatische Investment-GmbH*,
   364 F. Supp. 3d 243 (S.D.N.Y. 2018).....................................................................13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).............................................................................. *passim*

*In re Invest Bank PSC*,
   567 F. Supp. 3d 449 (S.D.N.Y. 2021).....................................................................14

*In re JSC BTA Bank*,
   577 F. Supp. 3d 262 (S.D.N.Y. 2021)..............................................................12, 16

*In re Kuwait Ports Authority*,
   No. 20-MC-0046,
   2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ....................................................12, 13

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
   62 F. Supp. 3d 358 (S.D.N.Y. 2014)................................................................16, 17

*LEG Q LLC v. RSR Corp.*,
   No. 17-cv-1559,
   2017 WL 3780213 (N.D. Tex. Aug. 31, 2017)...........................................................13

*In re Maksoud*,
   No. 25 Civ. 4188,
   2025 WL 2444130 (S.D.N.Y. Aug. 25, 2025)...........................................................15

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)...................................................................................11, 18

*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017).................................................................................11

*South Carolina Insurance Co v Assurantie Maatschappij NV*
   [1987] 1 AC 24 ...........................................................................................................16

*In re SPS I Fundo de Investimento de Acoes*,
   No. 22-MC-00118,
   2024 WL 917236 (S.D.N.Y. Mar. 4, 2024) ....................................................................10

*In re Tel. Media Grp. Ltd.*,
   No. 23-MC-0215,
   2023 WL 5770115 (S.D.N.Y. Sep. 6, 2023)................................................................16, 17

*In re Vale S.A.*,
   No. 20-MC-0199,
   2020 WL 4048669 (S.D.N.Y. July 20, 2020) ................................................................12

*In re YS GM Marfin II LLC*,
   No. 20-MC-0182,
   2022 WL 624291 (S.D.N.Y. Mar. 2, 2022) ....................................................................18

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
   596 U.S. 619 (2022).......................................................................................................12

**Statutes**

28 U.S.C. § 1782......................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................................18

Petitioner Island Global Yachting LLC ("IGY") respectfully submits this Memorandum of Law in support of its *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding (the "Application") authorizing the issuance of subpoenas (the "Subpoenas") to Island Capital Group LLC ("Island Capital") and two of its executives (collectively, "Respondents") seeking documents and deposition testimony for use in a legal proceeding to be filed in the United Kingdom (the "English Proceeding").[1]

## **INTRODUCTION**

IGY is a luxury marina operating company with locations throughout the world. Through this Application, IGY seeks permission to take discovery from Island Capital, an investment firm led by its Chairman and CEO Andrew Farkas, in support of litigation that IGY will soon be filing against one of its former executives in the United Kingdom. That litigation, and the discovery sought herein, relate to an outrageous scheme through which Farkas and Island Capital promised to pay significant sums of money to one of IGY's most senior executives, to induce this executive to assist Island Capital's efforts to repurchase IGY—including, it appears, by improperly sharing IGY's sensitive and confidential information with Island Capital—all in flagrant disregard of his duties to IGY.

In late 2022, Island Capital and Farkas sold IGY to the nation's largest recreational boat and yacht retailer, MarineMax. Almost immediately, Farkas came to regret his decision to sell the company he had founded, and he commenced a campaign to try and buy IGY back. Although IGY was well aware of the public side of that campaign, in which Farkas published a series of letters

---

[1]    Submitted contemporaneously herewith are the Declarations of Aaron H. Marks (the "Marks Declaration") and Stuart Doxford (the "Doxford Declaration"), both dated February 6, 2026. References to "Ex. __" refer to exhibits to the Marks Declaration. The Subpoenas are attached as Exhibits 1 through 3 to the Marks Declaration.

disparaging IGY's management, the secret side of Island Capital's scheme has only recently come to light.  Specifically, in late 2025, IGY uncovered evidence—including contemporaneous emails and, more recently, a sworn affidavit from an IGY employee—indicating that Farkas had promised a $900,000 bribe to a key IGY executive, Kenneth Jones, and offered further monies to Jones to distribute to other IGY executives under him, in order to induce Jones and his team to breach the duties they owe to IGY and take actions that favor Island Capital, including, on information and belief, providing Island Capital with confidential IGY information.

IGY intends to bring litigation against Jones in the High Court of England & Wales (the "English Court"), where Jones is located, asserting claims for breach of fiduciary duty and breach of contract, and seeking damages relating to Jones's improper conduct.  In support of its English litigation with Jones, IGY now seeks discovery from Island Capital, including communications with and relating to Jones, communications relating to the improper payments that Island Capital promised Jones in exchange for Jones breaching his fiduciary duties, and depositions of Farkas and Thomas Mukamal, an Executive Managing Director at Island Capital who had frequent direct contact with Jones.

IGY respectfully submits that the relief sought is plainly warranted.  First, the statutory requirements under Section 1782 have been met: Island Capital is found in this District and IGY seeks discovery for use in a contemplated foreign proceeding in the United Kingdom in which IGY is an interested party.  Second, the discretionary factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weigh in favor of granting relief: (1) Island Capital is not a participant in the English Proceeding, (2) English courts are receptive to Section 1782 relief, (3) the Application is not an attempt to circumvent U.K. proof-gathering restrictions, and (4) the discovery sought is narrowly-tailored and is not unduly intrusive or burdensome.

Accordingly, IGY respectfully requests that this Court grant the Application.

## FACTUAL BACKGROUND

### I.    IGY AND THE SALE TRANSACTION

Petitioner IGY is a luxury marina operating company offering premium yachting destinations for its customers at 24 marinas across the globe.  IGY was founded in 2005 by Andrew Farkas, a real estate investor and the Chairman and CEO of Island Capital, a merchant bank focused on real estate.  Until late 2022, IGY was owned by a subsidiary of Island Capital, Island Marina Holdings LLC ("Marina Holdings").

In August 2022, Island Capital agreed to sell IGY to a subsidiary of MarineMax, Inc., the nation's largest recreational boat and yacht retailer.  In addition to making a cash payment and assuming certain liabilities, the buyer agreed to pay to Island Capital an earnout payment of up to $100,000,000, dependent on whether IGY reached certain income targets over a two-year measurement period through the end of 2024.[2]  The transaction (the "Sale Transaction") closed on October 1, 2022.

### II.    ISLAND CAPITAL BRIBES A SENIOR IGY EXECUTIVE

Approximately one year after selling IGY to MarineMax, Farkas suffered a serious case of seller's remorse.  Beginning in the summer of 2024, Farkas commenced a public campaign of harassment against MarineMax, in which he issued numerous open letters to MarineMax, Inc.'s shareholders, expressing his intention to repurchase IGY and disparaging IGY and its management.  *See* Exs. 6-9.

---

[2]    MarineMax and IGY are currently engaged in litigation with Marina Holdings in Delaware Superior Court concerning, among other things, the amount of the earnout due to Island Capital.  *See MarineMax East, Inc., et ano v. Island Marina Holdings LLC*, No. N25C-04-293 (EMD) (CCLD) (Del. Super. Ct.).

Unbeknownst to IGY, in parallel with their public activist campaign, Farkas and Island Capital were also engaging in a clandestine attack on IGY, its business, and its new owner, by which they promised bribes to a key IGY executive, designed to induce that executive to breach his fiduciary duties to IGY in favor of Island Capital's interests.

The primary target of Island Capital's bribery was Kenneth ("Kenny") Jones, IGY's Managing Director of Global Facility Operations.  Jones had more than 20 years of industry experience and was responsible for all operational matters within IGY's portfolio of marinas, and supervised each of IGY's marina general managers and directors.  As a senior member of IGY's executive team, Jones was included in major operational decisions and had access to the company's most sensitive business information.  He also had a pre-existing relationship with Farkas and others at Island Capital—to whom he reported before IGY was purchased by MarineMax—which apparently made him an easy mark for Island Capital's bribery scheme.

In late 2025, IGY uncovered evidence that Farkas and Island Capital had secretly promised Jones a cash payment of at least $900,000—an amount equal to approximately 2.5 times Jones's salary at IGY.  Specifically, and as Jones told another IGY employee who has since executed a sworn affidavit, Farkas promised Jones and his team 3% of any earnout payment IGY ultimately paid to Island Capital, or up to $3 million in total (the "Improper Payment").  It is further clear from the documentary evidence and employee sworn affidavit that Farkas and Mukamal were key contacts for Jones for the past few years and had frequent communications with Jones throughout the period since the sale to MarineMax.

Jones hid from MarineMax and IGY senior management the Improper Payment—his portion of which he described as a "non-contractual gift" in correspondence he drafted to His Majesty's Revenue & Customs (the U.K. equivalent of the IRS) that was found in Jones's IGY

company emails.  *See* Ex. 5 (June 11, 2025 Draft Letter to HMRC).  Worse, IGY also uncovered evidence indicating that Jones was likely providing Island Capital with confidential and proprietary business information and acting at the direction of Island Capital to advance its interests over those of IGY—all while purporting to serve as a key IGY fiduciary.  For example, Jones forwarded company emails to his personal email address more than a dozen times over the period from July 2024 to October 2025, many of which contained confidential business information.  On information and belief, Jones sent that confidential information on to Island Capital, in breach of his duties to IGY.  Further, Jones had his team pursue at least one project that was not for the benefit of IGY.

### III.    THE ENGLISH COURT PROCEEDING

After learning of the Improper Payment, IGY terminated Jones's employment on or about November 20, 2025.  On February 6, 2026, IGY's U.K. counsel sent Jones a "Letter Before Claim," a formal pre-action communication required under the English Court's Civil Procedure Rules before an action may be commenced.  Ex. 4 (Letter Before Claim).  The Letter Before Claim details a series of allegations against Jones, including that:

- Jones was expecting to receive a substantial, non-contractual payment of $900,000 from Farkas and/or Island Capital, which he failed to disclose to IGY.

- Jones maintained undisclosed and unauthorized communications with Farkas and other Island Capital personnel, in direct contravention of explicit IGY instructions not to have contact with Island Capital due to outstanding litigation.

- Jones systematically forwarded confidential and commercially sensitive IGY documents—including financial data, management accounts, business opportunities, and strategic project information—from his work email account to his personal email

account, with the timing and nature of these actions suggesting an intent to misuse this information.

- Following his suspension, Jones was explicitly instructed not to delete or destroy any IGY information.  Despite this, he deleted 94 files from his IGY laptop within hours of his suspension, including documents directly related to the $900,000 payment.

Based on these facts, the Letter Before Claim asserts the following claims against Jones, on the basis of breaches of (i) express contractual obligations; (ii) implied duties of fidelity; and (iii) implied fiduciary duties:

- Jones's employment contract expressly prohibited the use or disclosure of confidential information during and after his employment.  By forwarding confidential and commercially sensitive IGY documents to his personal email account, Jones breached this clear contractual obligation.

- As a senior executive, Jones owed IGY a duty of fidelity, which included obeying lawful and reasonable orders, reporting threats to IGY's interests, maintaining confidentiality, and acting honestly.  His unauthorized communications with Island Capital, failure to report threats, misuse of confidential information, and deletion of evidence all constitute serious breaches of these implied duties.

- Given his senior position, Jones also owed fiduciary duties to IGY, including avoiding conflicts of interest, not making a profit from his position, and acting solely in IGY's interests.  By accepting a promised payment from a party adverse to IGY, misusing confidential information, and acting dishonestly, Jones breached these fundamental fiduciary obligations.

As a result of the of above breaches, the Letter Before Claim seeks the following remedies (among others):

- An account of all benefits received or promised from Island Capital or related parties.

- Full disclosure and return or destruction of all confidential information taken or used.

- Damages for losses suffered by IGY as a result of Jones's breaches, including loss of profits resulting from the misuse or disclosure of confidential information by Jones and his other unlawful conduct.

- Damages for losses suffered, including legal and forensic costs, management time, loss of profits, and recovery of any discretionary remuneration paid during the period of breach.

- As warranted by discovery, damages to remedy the harm caused to IGY's business by Jones's disloyalty.

- All other foreseeable costs and expenses arising from Jones's breaches.

After Jones responds to the Letter Before Claim, IGY intends to commence legal proceedings in the High Court of England & Wales. Doxford Decl. ¶ 14. The English Proceeding will be initiated by a Claim Form and Particulars of Claim, alleging breach of contract, breach of duties of fidelity, and breach of fiduciary duty, and seeking the relief outlined above. *Id.*

## IV.    DISCOVERY FROM ISLAND CAPITAL WILL AID IGY'S FOREIGN PROCEEDING AGAINST JONES

Through this proceeding, IGY seeks production of a narrowly tailored set of documents and deposition testimony, which are essential to support IGY's claims against Jones in the English Proceeding. IGY believes communications in the possession of Island Capital and its executives, and deposition testimony from Farkas and Mukamal, will provide further evidence of Jones's breaches. Doxford Decl. ¶¶ 17-18. Although IGY already possesses evidence of Jones's

breaches—as set forth in the Letter Before Claim—additional discovery from Island Capital is necessary and appropriate, since Island Capital almost certainly possesses additional incriminating documents that Jones does not. *Id.* at ¶ 17. This includes not only internal Island Capital communications that likely discuss the Improper Payment—and, critically, exactly what Island Capital was hoping to achieve from Jones through the Improper Payment—but also communications that Jones himself may have destroyed. As noted above, during its investigation of Jones, IGY discovered that Jones had attempted to delete relevant documents from his company computer. While he was unsuccessful, IGY has been unable to confirm whether Jones deleted relevant communications pre-dating the investigatory period—and Jones's improper efforts to delete his company files were likely duplicated among his personal files as well, including his personal messages and emails with Farkas and other Island Capital personnel. *Id.* Conversely, Island Capital likely has retained the communications that Jones improperly deleted, particularly since IGY put Island Capital on notice of its potential litigation with Jones as early as November 2025, and demanded that Island Capital retain and suspend any document deletion policies regarding potentially relevant documents. *See* Ex. 11 (November 11, 2025 letter); Ex. 12 (November 23, 2025 letter).

Accordingly, through the proposed Subpoenas attached to the Marks Declaration as Exhibits 1 through 3, IGY seeks the following limited discovery from Island Capital for use in the English Proceeding:

- All documents concerning communications with Kenneth Jones;

- All documents and communications concerning Kenneth Jones;

- All documents and communications concerning any actual or proposed payment to any IGY Employee, including, but not limited to, Kenneth Jones, to be paid on or after the Closing Date of the Sale Transaction;

- Documents sufficient to identify all payments made to any IGY Employee, including, but not limited to, Kenneth Jones, on or after the Closing Date of the Sale Transaction, including the date, amount, transferor and transferee for each such payment, as well as the type of asset transferred and currency of such asset (if cash); and

- Depositions of Andrew L. Farkas and Thomas Mukamal.

Exs. 1-3 (Subpoenas).

The documents and information sought are highly relevant and probative to issues in the English Proceeding concerning Jones's breach of his employment contract and his fiduciary duties to IGY. Communications from Island Capital and testimony from Farkas and Mukamal will provide additional details of Island Capital's bribery scheme with Jones, including the nature and extent of Jones's egregious fiduciary breaches, and thus provide support for IGY's fiduciary duty claims against Jones in the English Proceeding. Doxford Decl. ¶ 18.

## LEGAL STANDARD

Under 28 U.S.C. § 1782, district courts are empowered to order discovery for use in a foreign proceeding pursuant to a two-step analysis. *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022). First, the applicant must satisfy three statutory requirements: (i) "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made;" (ii) "the discovery is for use in a foreign proceeding before a foreign tribunal;" and (iii) "the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Second, courts consider four discretionary factors: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-

gathering restrictions or other policies of a foreign country or the United States;" and (iv) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

In exercising their discretion, courts should "tak[e] into consideration the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Abraaj Inv. Mgmt. Ltd.*, No. 20-MC-229, 2023 WL 2674752, at *2 (S.D.N.Y. Mar. 29, 2023) (citation omitted). In light of these twin aims, courts in this Circuit "have instructed district courts to take a 'hospitable view' of Section 1782 discovery, the availability of which 'is quite broad and only has broadened through successive amendments over the years.'" *In re SPS I Fundo de Investimento de Acoes*, No. 22-MC-00118, 2024 WL 917236, at *1 (S.D.N.Y. Mar. 4, 2024) (citations omitted). Applications under Section 1782 are commonly granted on an *ex parte* basis. *See Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").

As set forth below, IGY easily meets the statutory requirements, and the discretionary factors overwhelmingly favor granting discovery. Accordingly, the Court should grant IGY's Application and permit IGY to take discovery from Island Capital, Farkas, and Mukamal.

## ARGUMENT

### I.    IGY'S APPLICATION SATISFIES THE STATUTORY REQUIREMENTS.

IGY plainly meets each of the three requirements necessary for this Court to authorize discovery in aid of the English Proceeding: (1) Island Capital "resides" in this district; (2) the materials sought in the Application are "for use" in the impending English Proceeding; and (3) IGY is an "interested person" in the English Proceeding.

### A.    Island Capital "Resides" in the Southern District of New York.

Island Capital's presence in this District clearly satisfies the first statutory requirement. Section 1782 permits applicants to seek discovery from a district court in the district where an entity "resides or is found," language which "extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). "Thus, to 'reside' or be 'found' in a district for purposes of § 1782, a corporate entity must at the very least be subject to the court's general jurisdiction under *Daimler* [*AG v. Bauman*, 571 U.S. 117 (2014)]." *In re Sargeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017). A business entity is paradigmatically "at home" in a given forum, and thus subject to the exercise of general jurisdiction, both in its place of incorporation and principal place of business. *Id.* at 820 (citing *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)).

Here, Island Capital maintains its principal place of business—and its only office— at 717 Fifth Avenue in midtown Manhattan. Ex. 10 (Island Capital Website). IGY understands that Farkas and Mukamal live and/or work in Manhattan as well. This is sufficient to meet the first requirement of Section 1782. *See In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 440 (S.D.N.Y. 2024) (finding the "resides or is found" requirement met because the subject entities "maintain offices and do business within the Southern District of New York"); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 368 (S.D.N.Y. 2019) (finding requirement met because the subject entity "maintains offices" in midtown Manhattan); *Ecoprivate Bus. Ltd. v. Clearing House Payments Co. LLC*, No. 23-MC-232, 2023 WL 4848516, at *2 (S.D.N.Y. July 28, 2023) (finding requirement met where the applicant alleged that each entity "regularly transacts business and maintains an office in the District").

**B.      IGY Seeks Discovery "For Use" in the English Proceeding.**

The Application plainly seeks information "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Courts interpret "for use" broadly, finding the requirement satisfied if the materials sought "are to be used at some stage of a foreign proceeding." *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015). In other words, "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Id.* at 300 (citing *Intel*, 542 U.S. at 259). If a proceeding is not pending at the time the Section 1782 is filed, the applicant must demonstrate that it is "within reasonable contemplation" by "present[ing] to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *In re Kuwait Ports Authority*, No. 20-MC-0046, 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021) (citations omitted). Moreover, to be "for use," an applicant need not demonstrate that the requested discovery is admissible or discoverable in the foreign proceeding, *In re Vale S.A.*, No. 20-MC-0199, 2020 WL 4048669, at *3 (S.D.N.Y. July 20, 2020) (citation omitted), but only that such materials are "minimally relevant," *i.e.*, "will be employed with some advantage or serve some use in" a foreign tribunal, *In re Bourlakova*, No. 24-MC-0071, 2024 WL 4839047, at *2 (S.D.N.Y. Nov. 20, 2024) (citations omitted).

IGY's Application satisfies each of these criteria. The High Court of England & Wales, in which the proceeding against Jones will be filed, is clearly a "foreign tribunal." *See In re JSC BTA Bank*, 577 F. Supp. 3d 262, 266 (S.D.N.Y. 2021) ("[T]he requested discovery is for use in civil proceedings in at least one foreign tribunal: namely, the High Court of England and Wales"); *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 628 (2022) (finding that that the phrase "foreign tribunal" under Section 1782 refers to "an adjudicative body that exercises governmental authority" of a foreign sovereign).

IGY has also taken significant, concrete steps that demonstrate that litigation against Jones is "within reasonable contemplation"—and in fact is imminent.  Following its investigation of Jones's misconduct stemming from his surreptitious relationship with Farkas and Island Capital; IGY instructed English counsel, who on February 6, 2026 sent Jones the Letter Before Claim, which is a mandatory formal notice sent to the opposing party before legal proceedings may commence in the United Kingdom.  Doxford Decl. ¶ 8; Ex. 4.  The letter provides significant detail about the factual and legal bases of IGY's claims against Jones for breaches of his contractual and fiduciary duties, cites to relevant legal and statutory authority, includes copies of supporting evidence, and warns of an impending court action.  *Id.*  This is plainly sufficient to satisfy the statute.  *See, e.g.*, *LEG Q LLC v. RSR Corp.*, No. 17-cv-1559, 2017 WL 3780213, at *6 (N.D. Tex. Aug. 31, 2017) (finding requirement satisfied where applicant "served a Letter Before Action on the intended defendants in the English Derivative Action and is in the midst of the pre-action correspondence process that typically precedes the filing of a shareholder derivative action in the English High Court, and it intends to commence that action after obtaining discovery pursuant to Section 1782"); *BANOKA, S.à.r.l. v. Alvarez & Marsal Inc.*, No. 22-MC-0182, 2024 WL 1242994, at *6 (S.D.N.Y. Mar. 22, 2024) (finding requirement satisfied where applicants submitted a 14-page declaration describing their potential claims, retained English counsel, and sent two pre-suit demand letters); *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018) (finding requirement satisfied where the petitioner retained German counsel, sent a "detailed demand letter" to the respondent, and represented to the court that it would file suit within the next several months); *Kuwait Ports Authority*, 2021 WL 5909999, at *8 (finding requirement met where applicant indicated that it was conducting an "extensive and ongoing"

investigation regarding potential claims, retained Cayman counsel, and set forth an underlying legal theory for its pleadings).

The discovery that IGY seeks here also far surpasses the low bar of "minimally relevant," *Bourlakova*, 2024 WL 4839047, at *2, since IGY's proposed Subpoenas demand documents and information that are likely exclusively in Island Capital's possession and plainly will support IGY's claims against Jones for breach of his fiduciary duties.  Among other things, documents, communications, and deposition testimony relating to the Improper Payment will further demonstrate that Jones was disloyal, and will provide insight into Island Capital's goals in offering the Improper Payment (and, correspondingly, the damage that Jones did to IGY's business in consideration for the Improper Payment).  And given Jones's likely destruction of relevant evidence, access to that material from alternative sources like Farkas, Mukamal, and Island Capital is paramount.  Clearly, then, the requested discovery will "serve some use in" the impending English Proceeding.  *Id.*; *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 133 (2d Cir. 2017) (noting that Section 1782 discovery "'serve[s] some use' if it tends to prove" the underlying claim in the foreign tribunal) (citation omitted).

## C.    IGY Is an "Interested Person" under Section 1782.

Finally, IGY is an "interested person" in the English Proceeding.  28 U.S.C. § 1782.  "No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."  *Intel*, 542 U.S. at 256 (alteration in original); *accord In re Invest Bank PSC*, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021) (finding that a litigant in a proceeding "is obviously a party 'interested' in the underlying proceeding").  And the statute's language also extends to "would-be litigants" in a contemplated foreign proceeding.  *Ecoprivate Bus.*, 2023 WL 4848516, at *3.  As the party that will be litigating against Jones in the English Proceeding, IGY plainly is an "interested person" under the statute.

14

## II.    The Discretionary Factors Strongly Favor Discovery.

Once courts determine that the statutory requirements are met, they turn to the four discretionary factors under *Intel*.  Because each of those factors strongly weighs in favor of discovery here, the Court should grant IGY's Application.

### A.    Island Capital Is Not a Participant in the English Proceeding.

By inquiring whether "the person from whom discovery is sought is a participant in the foreign proceeding," *Intel*, 542 U.S. at 264, "[t]he purpose of the first factor is to root out situations in which 'the need for § 1782(a) aid [] is not as apparent' because '[a] foreign tribunal has jurisdiction over' the party from whom discovery is sought 'and can itself order [that party] to produce evidence,'" *Fed. Republic of Nigeria*, 27 F.4th at 160 n.7 (alterations in original) (quoting *Intel*, 542 U.S. at 264).

As detailed in the Letter Before Claim, the English Proceeding will involve contractual and fiduciary duty claims by IGY against *Jones*—Respondents will not be parties to the litigation. Further, Respondents do not appear to maintain any offices, or conduct significant business, in the United Kingdom, and therefore lie beyond the reach of the English Court's jurisdiction and are not subject to an order to compel production of evidence.    Doxford Decl.  ¶¶ 22-29. *See, e.g.*, *In re Maksoud*, No. 25 Civ. 4188, 2025 WL 2444130, at *1 (S.D.N.Y. Aug. 25, 2025) (finding that the first *Intel* factor favored the applicant since the respondents were not parties to the foreign proceeding, "thereby inhibiting the Brazilian court from compelling" respondents "to produce documents"); *Ernesto Andrade*, 712 F. Supp. 3d at 441 (same).  Thus, this factor weighs in favor of granting the Application.

### B.    Courts in the United Kingdom Are Receptive to Section 1782 Relief.

The second *Intel* factor considers the nature of the foreign tribunal, the character of the proceeding, and the receptivity of the foreign tribunal to federal judicial assistance.  *Intel*, 542 U.S.

at 264.  Congress's twin aims of promoting respect for foreign tribunals and encouraging reciprocal assistance are of paramount importance to the analysis under this factor: "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance," and a court "should deny discovery on the basis of a lack of receptiveness only where it is provided 'with authoritative proof that the foreign tribunal would reject evidence obtained with the aid of [S]ection 1782.'" *In re CI Invs. Inc.*, No. 23-MC-0434, 2023 WL 8643965, at *5 (S.D.N.Y. Dec. 14, 2023) (alteration in original; citation omitted).

Courts in this District have repeatedly recognized that "courts in the United Kingdom . . . are [] receptive to Section 1782 discovery."  *In re Tel. Media Grp. Ltd.*, No. 23-MC-0215, 2023 WL 5770115, at *8 (S.D.N.Y. Sep. 6, 2023) (alterations in original; citation omitted); *accord In re Batbold*, No. 21-MC-0218, 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021); *Azima v. Citibank, N.A.*, No. 22-MC-0072, 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022); *JSC BTA Bank*, 577 F. Supp. 3d at 267; *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014).  Indeed, *Intel* itself cites a decision from the British House of Lords approving of litigants' use of Section 1782 in U.K. legal proceedings.  *Intel*, 542 U.S. at 262; *see also* Doxford Decl. ¶¶ 30-35; Exs. C-D to the Doxford Decl. (English legal authorities).  This factor therefore weighs in favor of granting IGY's Application as well.

### C.    IGY's Application Comports with Proof-Gathering Restrictions in the U.K.

The third *Intel* factor evaluates whether a Section 1782 application conceals an attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States. 28 U.S.C. § 1782.  "[C]ircumvention occurs where the applicant uses a § 1782 application to avoid measures that are intended to restrict certain means of gathering or using evidence." *Fed. Republic of Nigeria*, 27 F.4th at 153.  For instance, this factor weighs against discovery "when applicants

have already exhausted available remedies in foreign tribunals and seek another 'bite at the apple' after having already been denied recourse," *Tel. Media Grp.*, 2023 WL 5770115, at *8, or when applicants otherwise pursue discovery in "bad faith," *Batbold*, 2021 WL 4596536, at *4.

When assessing circumvention, courts consider whether the foreign jurisdiction has "rules akin to privileges that prohibit the acquisition or use of certain materials"; absent an express prohibition, the third *Intel* factor weighs in favor of granting the application. *See In re Application of Salem*, No. 24-MC-0005, 2024 WL 3026670, at *13 (S.D.N.Y. June 17, 2024) (citation omitted); *Tel. Media Grp.*, 2023 WL 5770115, at *8 (explaining that "there is a difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a mechanism for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents," with only the latter constituting circumvention) (citation omitted).

Here, IGY's Application comports with, rather than conceals an attempt to circumvent, proof-gathering restrictions in the United Kingdom.  U.K. courts have no evidentiary rule or policy that prohibits the use of the type of discovery that IGY seeks here.  Doxford Decl. ¶ 36; *see also Kraus*, 62 F. Supp. 3d at 362 (noting that the applicant's U.K. counsel opined that "U.K. courts are permitted to use foreign discovery devices to gather evidence").  Instead, as noted above, courts in the United Kingdom expressly have welcomed discovery obtained from the United States through the use of Section 1782.  And IGY is not seeking this discovery in bad faith, or as a second "bite at the apple."  Accordingly, the third *Intel* factor weighs in favor of granting IGY's Application.

D.    **IGY's Narrow, Targeted Discovery Requests Are Neither Unduly Intrusive nor Unduly Burdensome.**

In applying the fourth *Intel* factor, courts "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Accordingly, this factor may militate against providing discovery assistance when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Here, the documents and deposition testimony sought in IGY's Application are narrowly tailored to encompass only communications with or about Jones and Island Capital's Improper Payment to him. These materials are not only highly relevant to the issues in the English Proceeding, but IGY cannot obtain them elsewhere: as uncovered during IGY's investigation, Jones likely destroyed many relevant communications, including with Farkas and other Island Capital executives; and Island Capital's internal communications, along with sworn testimony from Farkas, likely will shed light on exactly what it demanded of Jones in exchange for the Improper Payment. Such narrow requests fall well within the bounds of Section 1782 applications that courts in this District have previously granted. *See, e.g.*, *In re Fund for Protection of Inv. Rights in Foreign States*, No. 19-MC-0401, 2020 WL 3833457, at *4 (S.D.N.Y. July 8, 2020), *rev'd sub nom. on other grounds*, *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022) (finding that a Section 1782 discovery application, which requested myriad documents and sought to depose several individuals, was permissible in scope, as the requests went "to the heart of" the applicant's case); *Ex parte Abdalla*, No. 20-MC-0727, 2023 WL 2911047, at *5 (S.D.N.Y. Apr. 12, 2023) (finding that a Section 1782 application, which requested discovery from twelve persons and spanned nine years, was permissible in scope because it bore directly on the claims at

18

issue in the litigation); *In re YS GM Marfin II LLC*, No. 20-MC-0182, 2022 WL 624291, at *11 (S.D.N.Y. Mar. 2, 2022) (finding that a Section 1782 application was permissible in scope where it sought documents from several individuals over a four-year period).  Therefore, the fourth *Intel* factor weighs in favor of granting IGY's Application.

## <u>CONCLUSION</u>

For the foregoing reasons, IGY respectfully requests that this Court issue an Order (i) approving Petitioner's Application for discovery; (ii) granting permission for Petitioner to issue subpoenas as they appear attached as Exhibits 1-3 to the Marks Declaration; and (iii) directing Island Capital to produce documents in its possession, custody, and control, as requested in the subpoena attached as Exhibit 1 to the Marks Declaration, no later than 30 days following the date of this Court's order.

Dated:    February 6, 2026          Respectfully submitted,
            New York, New York

KIRKLAND & ELLIS LLP

*/s/ Aaron H. Marks*
Aaron H. Marks, P.C.
aaron.marks@kirkland.com
Gavin D. Schryver
gavin.schryver@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

*Attorneys for Petitioner*
*Island Global Yachting LLC*