May 29, 2026

**Via ECF**

Hon. Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square, Courtroom 219
New York, New York 10007

      Re:    *In re Island Global Yachting LLC*, 26-MC-00053 (VSB)(SN) (S.D.N.Y)

Dear Judge Netburn:

      We write on behalf of all parties to the above action—Petitioner Island Global Yachting LLC ("IGY" or "Petitioner") and Respondents Island Capital Group LLC ("Island Capital"), Andrew Farkas, and Thomas Mukamal (collectively, "Respondents")—in response to the Court's May 20, 2026 Order (the "Order").

**Petitioner's Position**

      Through its Petition, IGY seeks discovery in support of an anticipated proceeding that IGY UK ultimately filed in England against a senior IGY UK executive who breached his contractual and fiduciary duties after receiving promises of improper payments as part of an outrageous bribery scheme carried out by Respondents. In its Order, the Court asked a single straightforward question: should IGY be permitted to amend its application to substitute IGY UK as Petitioner? The answer is plainly "yes."

      Rule 15(a) governs requests to substitute new plaintiffs, *see Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296 (2d Cir. 1966), and applies to proceedings pending under 28 U.S.C. § 1782, *see Ex parte Abdalla*, 2023 WL 2911047, at *2 (S.D.N.Y. Apr. 12, 2023). Under Rule 15, "[t]he [C]ourt should freely give leave when justice so requires," and motions to amend under Rule 15(a) should only be denied for such reasons as "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005).

      Here, there will be absolutely no prejudice to Respondents if the Court grants leave to substitute IGY UK for IGY as Petitioner in this matter. Instead, substitution will merely moot one of the objections advanced by Respondents regarding whether IGY is an "interested person" under Section 1782. No additional briefing will be required as a result of the substitution, which does not affect any of the other arguments Respondents advanced in their opposition. ECF 19. Nor was there any "undue delay" on Petitioner's part. Respondents point to a February 26, 2026 letter in which they first raised their argument that IGY was not an "interested person." ECF 20-9, p.2. But IGY promptly explained to Respondents that it is an "interested person" under applicable caselaw, ECF 20-10, p.10, and in its very next filing, barely a month later, Petitioner provided that caselaw to the Court and offered to substitute IGY UK if there remains any doubt about IGY's status as an interested person. ECF 21, p.5-6 & n.5. This comes nowhere close to establishing

Hon. Sarah Netburn
May 29, 2026
Page 2

"undue delay."  *See Bah v. Royal Air Maroc*, 2025 WL 3442702, at *3 (S.D.N.Y. Dec. 1, 2025) ("cases where leave to amend is denied [on the basis of undue delay] usually involve several years of delay in conjunction with a showing of prejudice and or bad faith"); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) (same, permitting addition of plaintiffs).

For their part, instead of simply offering an answer responsive to the Court's straightforward question, Respondents have seized upon the Court's Order to advance brand-new arguments (and to request a stay) that could—and should—have been made in their opposition brief.  On May 12, 2026—six weeks after briefing was complete—Respondents informed IGY for the first time that they were willing to submit to the jurisdiction of the English Court.  They now assert that, as a result of these purportedly changed circumstances, this Court should deny the Petition or at least stay this matter pending their motion to dismiss IGY UK's claims against them in Delaware, largely on forum non conveniens grounds based on their conjured new tactic.

As an initial matter, these arguments and request are untimely.  As IGY pointed out in its reply brief, "if Respondents were willing to submit to the jurisdiction of the English Court and produce documents in the English Proceeding … , they would have said so" in their opposition brief.  ECF 21, p.10.  They did not.  And Respondents cannot now characterize their own post-hoc tactical decision—combined with a reiteration of the same procedural history and arguments they included in their opposition brief, *see* ECF 19—as a change in circumstances that permits them to make brand-new arguments, especially as nothing in the Court's Order invited anything other than a response to the straightforward question described above.

In any event, Respondents' position—that their newfound willingness to submit to jurisdiction in England moots or otherwise compels the denial or stay of IGY's Petition—is utterly meritless.  Permitting a discovery target to unilaterally moot a Section 1782 discovery petition by purporting to submit to (likely more limited) discovery in the foreign proceeding would provide a formidable new defense under the statute.  Fortunately, the law is otherwise.  As this Court has made clear, "'[t]he relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application.'"  *In re Martinez*, 2024 WL 5402058, at *6 (S.D.N.Y. Nov. 1, 2024) (citation omitted).  Thus, it is well established that even the fact that a target is *a party* to the foreign proceeding "does not automatically foreclose § 1782 aid."  *Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016).  When the target is a *third-party* to the foreign proceeding, Section 1782 relief is even more likely to be warranted, since "[w]hen the target of discovery is not a party the foreign tribunal may be less inclined—even if it is empowered—to compel third-party discovery."  *See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006).  And this is particularly true—and Section 1782 relief particularly warranted—where, as here, the foreign court does not generally authorize "the type (and scope) of evidentiary production sought by [the applicant] in this Court."  *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016); *see also, e.g.*, *In re Refineria de Cartagena S.A.S.*, 2024 WL 95056, at *8-10 (S.D.N.Y. Jan. 8, 2024) (finding that first *Intel* factor weighed in favor of granting relief even when respondent "consented to the jurisdiction of the foreign tribunals" where "the requested discovery requests would likely be denied in the foreign proceeding" pending before the English High Court).

Hon. Sarah Netburn
May 29, 2026
Page 3

In other words, even if it had been timely made, Respondents' strategic decision to submit to jurisdiction in England would not change the outcome of the Petition here: it should be granted.

Finally, the Court should deny Respondents' request for a stay, which is unnecessary—the Petition is fully briefed and ready for decision—and would cause substantial prejudice to Petitioner. The English Proceeding is not stayed and is moving forward. Thus, a stay in favor of the Delaware litigation (where Respondents are actively *fighting* discovery) would merely increase the risks that IGY UK will not obtain highly relevant evidence before the English Proceeding reaches trial—directly contrary to the policies underlying Section 1782. *See* ECF 2, p.10.

**<u>Respondents' Position</u>**

There is no reason to allow IGY's affiliate IGY Services Europe Limited ("<u>IGY UK</u>") to substitute for IGY at this juncture. IGY knowingly pursued a defective Application, and the Court's analysis of the *Intel* factors depends on a still-developing situation caused by IGY UK pursuing duplicative, concurrent, and wasteful litigation in multiple jurisdictions, all aimed at the *same* discovery. In these circumstances, IGY should withdraw the Application. Barring that, Respondents respectfully request that, to conserve Respondents' and the Court's resources, the Court stay the Application, including any motion to amend or substitute, pending resolution of the related motions discussed below.

*Background*: On February 6, 2026, IGY filed this Application. Two days after accepting service of the Application, Respondents' counsel asked IGY to withdraw the Application, including because IGY was not an "interested person" under Section 1782. *See* ECF No. 20-9. IGY called that request "utterly without merit," arguing that it was "simply irrelevant" that IGY did not itself contemplate initiating any foreign proceeding. ECF No. 20-10.

On March 18, 2026, the day before Respondents' opposition to the Application was due, IGY UK commenced an action against Mr. Jones in England (the "<u>English Action</u>"). Counsel for IGY UK notified Respondents' counsel of the case's initiation but did not provide copies of the pleadings. Later that day, IGY UK and its affiliate MarineMax East, Inc. ("<u>MarineMax East</u>") obtained permission from the Delaware Superior Court (the "<u>Delaware Court</u>") to file an amended complaint in the pending Delaware action regarding an earnout dispute (the "<u>Delaware Action</u>"). That same day, IGY UK filed claims against Island Capital, Island Marina Holdings LLC (which is an affiliate of Island Capital, "<u>Marina Holdings</u>"), and Mr. Farkas for purportedly aiding and abetting Mr. Jones's breach of fiduciary duty and allegedly tortiously interfering with Mr. Jones's alleged employment contract with IGY UK (the "<u>IGY UK Claims</u>"). ECF No. 21 at 3, 4.

On March 19, 2026, Respondents opposed the Application. ECF No. 19. On March 27, 2026, MarineMax East and IGY UK served discovery in the Delaware Action pertinent to the English Action, including to seek documents sought through the Application. In its March 30, 2026 reply, IGY speculated that—even though, as of March 19, 2026, Respondents had neither received the papers initiating the English Action nor been served with any discovery in the Delaware Action—"if Respondents were willing to submit to the jurisdiction of the English Court

Hon. Sarah Netburn
May 29, 2026
Page 4

and produce documents in the English Proceeding, or produce documents in Delaware, they would have said so."  ECF No. 21 at 10.

On May 12, 2026, counsel for Island Capital and Mr. Farkas advised counsel for IGY and IGY UK that Respondents Island Capital and Mr. Farkas consented to be joined in the English Action for purposes of resolving the IGY UK Claims, provided that those claims proceed in that forum only.  *See* Ex. A.  Thereafter, Island Capital and Mr. Farkas (as well as Marina Holdings) moved to dismiss the IGY UK Claims in the Delaware Action, including on *forum non conveniens* grounds (the "Motion to Dismiss").  Island Capital and Mr. Farkas argued that, if such claims were permitted to proceed anywhere (they should not), they belong in the English Action.  Island Capital, Mr. Farkas, and Marina Holdings also moved to stay discovery on those claims pending resolution of the Motion to Dismiss (the "Motion to Stay").  The Motion to Dismiss and Motion to Stay will be fully briefed by July 17, 2026 and June 9, 2026, respectively.

*Argument:*  IGY UK should not be permitted to fix IGY's facially defective filing to continue a campaign of concurrent, duplicative, and wasteful litigation.  This is not the "efficient means of assistance to participants in international litigation" that Section 1782 aims to provide.  *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) (internal quotation omitted).  Rather, even under Rule 15's lenient standard, there is "good reason" to deny Petitioner leave to amend at this time.  *In re Gen. Elec. Co. Sec. Litig.,* 2012 WL 2892376, at *4 (S.D.N.Y. July 12, 2012) (leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party") (internal quotation omitted).  Instead, Respondents request that the Court defer ruling on the Application (including IGY's request for leave to amend or to substitute IGY UK) until after the Delaware Court rules on the Motion to Dismiss and the Motion to Stay.

As a threshold matter, IGY intentionally *chose* not to withdraw or amend its Application, even though Respondents immediately notified IGY that it was facially defective because IGY is not and would not be a party to the English Action.  *See supra* pg. 3; ECF No. 20-9.  Instead, IGY forced Respondents to expend considerable time, effort, and expense in briefing their opposition.  Courts routinely deny leave to amend in such circumstances.  *See, e.g.*, *In re Eaton Vance Mut. Funds Fee Litig.,* 403 F. Supp. 2d 310, 319 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) (collecting cases and denying leave where "the plaintiffs had ample notice of defects in their complaint and opportunity to cure them before the Court ruled on the motion").

In addition*,* the Court should defer resolving any application—either by IGY or IGY UK— because it is a waste of party and judicial resources to brief and decide the Application while facts relevant to the *Intel* factors continue to develop.  If the Delaware Court determines that the IGY UK Claims should proceed in the English Action and *grants* the Motion to Dismiss, then there is no need for the Court to order discovery in aid of the English Action.  "[W]hen the person from whom discovery is sought is a participant to the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  As discussed above, Island Capital and Mr. Farkas have consented to be joined in the English

Hon. Sarah Netburn
May 29, 2026
Page 5

Action, provided the IGY UK Claims proceed there only.[1]  By contrast, if the Delaware Court *denies* the Motion to Dismiss and Motion to Stay and orders that the IGY UK Claims proceed in Delaware, then discovery on the IGY UK Claims will proceed in the Delaware Action, and there is no need to grant Section 1782 discovery so that the Court can oversee substantially the same discovery taking place a few states away.[2]

Further, unlike in the case cited by IGY, the English Court *could* "control the evidence sought and order production" of documents and testimony from Island Capital and Mr. Farkas, should they be joined in the English Action to adjudicate the IGY UK Claims pending in the Delaware Action.  *See supra* pg. 2 (citing *In re Martinez*, 2024 WL 5402058, at *6 (S.D.N.Y. Nov. 1, 2024)).  Moreover, there is no urgency to resolve the Application now.  The English Action remains at its earliest stage.  When it is resolved whether IGY UK will be permitted to pursue its claims against Island Capital and Mr. Farkas and, if so, *where*, then the parties can work out a discovery procedure to eliminate the need for a separate and duplicative court proceeding here. Thus, at a minimum, the Court should defer ruling on the Application pending resolution of the Motion to Dismiss and Motion to Stay.

\* \* \*

The parties thank the Court for its attention to this matter.

---

[1] IGY has no basis to assert that Island Capital and Mr. Farkas consented to be joined in the English Action too late.  IGY filed the English Action **the day before** Respondents' opposition was due and *did not provide those papers to Respondents before their opposition brief was due.  See supra* pg. 3.  Suffice it to say, it is unreasonable to suggest that Respondents should have provided their position the very next day, without access to the case-initiating papers.

[2] If the Delaware Court dismisses the IGY UK Claims for failure to state a claim and the IGY UK Claims are not proceeding *anywhere* (*i.e.*, the status quo when the Application was originally filed), then the parties would update the Court at that time, including on their respective views of next steps.

Hon. Sarah Netburn
May 29, 2026
Page 6

Respectfully submitted,


_/s/   Aaron H. Marks_

Aaron H. Marks, P.C.
aaron.marks@kirkland.com
Gavin D. Schryver
gavin.schryver@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

*Attorneys for Petitioner*
*Island Global Yachting LLC*


_/s/   Danielle L. Rose_

Danielle L. Rose
danielle.rose@kobrekim.com
Darryl G. Stein
darryl.stein@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200

*Counsel for Island Capital Group LLC*


_/s/   Adam B. Gilbert_

Adam B. Gilbert
agilbert@nixonpeabody.com
Thomas Mealiffe
tmealiffe@nixonpeabody.com
NIXON PEABODY LLP
55 W 46th Street
New York, NY 10036
(212) 940-3004

*Counsel for Andrew L. Farkas*


_/s/   Richard C. Schoenstein_

Richard C. Schoenstein
rschoenstein@tarterkrinsky.com
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
(212) 216-1120

*Counsel for Thomas Mukamal*