**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

IN RE PETITION OF ISLAND GLOBAL
YACHTING LLC FOR JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/2026

26-MC-00053 (VSB)(SN)

**REPORT &**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE VERNON S. BRODERICK:**

IGY Services Europe Limited ("Petitioner" or "IGY UK"), substituted as petitioner, filed

the operative amended application to obtain discovery from Island Capital Group LLC ("Island

Capital"), Andrew Farkas, and Thomas Mukamal (collectively, "Respondents") for use in an

action pending in the United Kingdom (the "Application"), pursuant to 28 U.S.C. § 1782. ECF

Nos. 1 & 27. I recommend that the Court GRANT the Application.

**BACKGROUND**

**I.      IGY, the Sale Transaction, and the Delaware Litigation**

Island Global Yachting LLC ("IGY") is a luxury marina operating company. Declaration

of Stuart Doxford ("Doxford Decl.") ¶ 5, ECF No. 4. It was founded in 2005 by Andrew Farkas,

a real estate investor and the Chairman and CEO of Island Capital, a merchant bank focused on

real estate. Id. Until 2022, IGY was owned by Island Marina Holdings LLC ("Marina

Holdings"), a subsidiary of Island Capital. Id.

In 2022, Marina Holdings sold IGY to MarineMax East, Inc. ("MarineMax East")

pursuant to a Securities Purchase Agreement ("SPA"). Id. ¶ 6; ECF No. 19 at 3. The SPA

provided that MarineMax East would pay Marina Holdings a cash payment plus a post-closing

earnout payment of up to $100 million, depending on IGY's performance during the relevant measurement period. Id. ¶ 6.

By early 2025, a dispute arose between Marina Holdings and MarineMax East regarding the amount of the earnout payment and the information that MarineMax East was required to provide pursuant to the SPA. As a result, MarineMax East and IGY sued Marina Holdings in Delaware Superior Court. Marina Holdings counterclaimed, alleging, among other things, that MarineMax East wrongfully failed to pay $50 million of the earnout. Declaration of Danielle L. Rose ("Rose Decl."), Exhibit 1, ECF No. 20-1.

After IGY filed this § 1782 application, MarineMax East and IGY amended the Delaware complaint to substitute IGY for its wholly-owned subsidiary, IGY UK, and for IGY UK to assert claims against Island Capital and Farkas for tortious interference with contract and aiding and abetting breach of fiduciary duty, based on the same alleged misconduct involving Kenneth Jones raised in the UK Litigation. Rose Decl., Exhibits 5, 6. Island Capital, Farkas, and Marina Holdings have moved to dismiss IGY UK's claims and stay discovery pending a decision on the motion to dismiss. Supplemental Declaration of Danielle L. Rose ("Supp. Rose Decl."), Exhibit 1, 2, ECF No. 30.[1]

## II.    Kenneth Jones and the UK Litigation

IGY alleges that, approximately a year after the sale to MarineMax East, Island Capital and Farkas sought to repurchase or otherwise influence IGY. Farkas is alleged to have issued numerous open letters to MarineMax East's shareholders that expressed his intention to repurchase IGY and disparaged IGY and its management. IGY alleges that, as part of this

---

[1] In connection with this motion, Island Capital and Farkas stated that they would consent to be joined in the English action for purposes of resolving the IGY UK claims, provided those claims proceed only in England. Id. at 9, 29.

"public activist campaign," Island Capital and Farkas also sought to bribe Kenneth Jones, IGY's Managing Director of Global Facility Operations. IGY believes that, in exchange for a substantial payment tied to the earnout, Jones concealed the promised payment, communicated improperly with Island Capital, transmitted confidential information, and deleted certain company files. Doxford Decl. ¶ 9.

On March 18, 2026, IGY UK commenced an action against Jones in the High Court of Justice, King's Bench Division.[2] IGY UK seeks damages for Jones's breach of his fiduciary duties and his employment agreement. In particular, IGY UK alleges that Jones and his team were expecting to receive a portion of the earnout payment that MarineMax East owed to Marina Holdings and that Jones had improperly accessed or used confidential business information.

### III.    This § 1782 Proceeding

On February 6, 2026, the same day UK counsel sent Jones the Letter Before Claim, IGY filed this application under 28 U.S.C. § 1782. IGY sought leave to serve subpoenas on Island Capital, Farkas, and Thomas Mukamal, an Executive Managing Director at Island Capital. Id. ¶¶ 17-18. The proposed subpoenas seek documents concerning communications with Jones, any actual or proposed payments to Jones or other IGY employees, and related topics, and deposition testimony from Farkas and Mukamal. Id.

Respondents opposed the application, arguing, among other things, that IGY was not an "interested person" under § 1782 because IGY UK, not IGY, was the entity pursuing the UK Litigation. ECF No. 19 at 16-18. In reply, IGY argued that it qualified as an interested person because IGY UK is its wholly-owned subsidiary, but it alternatively requested leave to amend the application to substitute IGY UK as petitioner. ECF No. 21 at 5-6 & n.5.

---

[2] In accordance with UK law, IGY UK sent Jones a Letter Before Claim on February 6, 2026.

On June 9, 2026, the Court granted IGY's request to amend the application to substitute IGY UK as petitioner. ECF No. 26. The Court also permitted Respondents to file a supplemental opposition tailored to the substitution of IGY UK as petitioner. Id. IGY UK filed an amended application on June 12, 2026. ECF No. 27. Respondents filed a supplemental opposition on June 26, 2026, and IGY UK filed a supplemental reply on July 6, 2026. ECF Nos. 29, 32.

## DISCUSSION

### I.    Legal Standard

"A district court has authority to grant a § 1782 application where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (internal quotations and alterations omitted). "[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery, 121 F.3d 77, 78 (2d Cir. 1997) (citations omitted). This discretion, however, "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 97 (2d Cir. 2020 (cleaned up).

Accordingly, a court is directed to consider four additional factors under Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004), when reviewing a § 1782 application.Specifically, the court should consider (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding . . . [such that] the need for § 1782(a) aid

generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the

receptivity of the foreign government or the court or agency abroad to U.S. federal-court

assistance" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-

gathering restrictions"; and (4) whether the request is "unduly intrusive or burdensome." Id. at

264-65. These "factors are not to be applied mechanically," and a district court "should also take

into account any other pertinent issues arising from the facts of the particular dispute." Kiobel ex

rel. Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 245 (2d Cir. 2018).

## II.    Application

### A.  Statutory Requirements

First, the Court must consider the three statutory requirements of 28 U.S.C. § 1782. I

recommend that the Court find that Petitioner has met all three requirements.

#### 1.  Presence

Petitioner has established that Respondents reside or are found in this district. The Court

of Appeals has interpreted this element to require only a basis for personal jurisdiction over the

respondent. See In re del Valle Ruiz, 939 F.3d 520, 528 (2d Cir. 2019) ("§ 1782's 'resides or is

found' language extends to the limits of personal jurisdiction consistent with due process.").

"[W]here the respondent's contacts are broader and more significant, a petitioner need

demonstrate only that the evidence sought would not be available but for the respondent's forum

contacts." Id. at 530. Here, Island Capital maintains its principal place of business in New York

City, and Respondents do not dispute that Farkas and Mukamal reside in New York as well.

Thus, the Court may exercise general personal jurisdiction, satisfying § 1782's first element.

5

### 2. For Use

Second, Petitioner has established that the discovery is "for use" in a foreign proceeding. To satisfy this requirement, the requested discovery must only "be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail." Mees, 793 F.3d at 298. Courts within this Circuit "have described the for use prerequisite as imposing a *de minimis* burden on applicants." In re Associacao dos Profissionais dos Correios, No. 22-mc-0132 (RA), 2024 WL 4299019, at *4 (S.D.N.Y. Sept. 24, 2024) (internal quotation marks omitted).

That standard is met here. The English proceeding is pending, and Petitioner is the plaintiff in that proceeding. ECF No. 21 at 7; ECF No. 27 at 1. Petitioner seeks discovery concerning Jones's communications with Respondents, alleged payments promised or made to Jones, and Respondents' alleged expectations of Jones in connection with those payments. ECF No. 3-1. That discovery bears on Petitioner's claims that Jones breached his contractual, fiduciary, and fidelity obligations by concealing promised payments, communicating improperly with Island Capital, and transmitting confidential information. Petitioner therefore has shown that the requested discovery can serve some use in the English proceeding.

Respondents argue that the discovery is not really for use in the English proceeding but instead is aimed at Petitioner's overlapping claims in the Delaware action. ECF No. 19 at 18-19; ECF No. 29 at 5. The overlap between the English and Delaware proceedings does not defeat the statutory "for use" requirement. Section 1782 "does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." In re Accent Delight Int'l Ltd., 869 F.3d 121, 131 (2d Cir. 2017). Allegations that an applicant has an additional or collateral

purpose for seeking discovery are generally addressed through the Court's discretionary review, not by imposing an extra-statutory limitation on the "for use" requirement. Id. at 135.

Even assuming that allegations of pretext are relevant to the "for use" requirement, any overlap between the requested discovery and the Delaware action is readily explained by the fact that both proceedings concern common underlying facts involving the same alleged misconduct. See In re B&C KB Holding GmbH, No. 23-1014, 2024 WL 3170983, at *4 (2d Cir. June 26, 2024) (summary order) (rejecting pretext argument where overlap between § 1782 requests and other proceedings was "readily explained" by the fact that the proceedings concerned "common underlying facts involving the same alleged wrongdoing"). The English action concerns whether Jones breached his contractual, fiduciary, and fidelity obligations by concealing a promised payment, communicating improperly with Island Capital, transmitting confidential information, and deleting company files. The Delaware claims concern Island Capital's and Farkas's alleged role in inducing or assisting that misconduct. Discovery concerning Respondents' communications with Jones, any promised payments to Jones, and Respondents' expectations of Jones therefore can serve some use in the English action even if it may also be relevant to the Delaware action.

Therefore, § 1782's second element has been satisfied.

### 3. Interested Persons

With respect to the third statutory requirement, Petitioner is a party to the English proceeding. "No doubt litigants are included among, and may be the most common example, of the 'interested person[s]' who may invoke § 1782." Intel, 542 U.S. at 256 (citations omitted). Respondents do not contest that the Application meets the third statutory element. Therefore § 1782's third element has been satisfied.

**B. Discretionary Factors**

Because all three statutory requirements are satisfied, the Court considers whether the Intel discretionary factors further support authorizing discovery under § 1782.

**1. Participation in Foreign Proceeding**

The first Intel factor asks whether the entity or person from whom discovery is sought is a participant in the proceeding. Id. at 264. If a respondent is a participant in a foreign proceeding, "the need for § 1782(a) aid generally is not as apparent" as it would be if the respondent were not a participant. Id. "Irrespective of the nominal entity from whom discovery is sought, 'when the real party from whom documents are sought . . . is involved in foreign proceedings, the first Intel factor counsels against granting a Section 1782 petition.'" In re Martinez, No. 24-mc-306 (RA)(SN), 2025 WL 2505471, at *5 (S.D.N.Y. Sept. 2, 2025) (quoting Kiobel, 895 F.3d at 245). That is because where "evidence is available to the foreign tribunal . . . § 1782 aid is both unnecessary and improper." In re Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006), abrogated on other grounds by In re del Valle Ruiz, 939 F.3d 520 (2d Cir. 2019).

The first Intel factor weighs in favor of discovery because Respondents are not parties to the English proceeding. Although Respondents contend that Island Capital and Farkas *may* become parties to the English action if the Delaware Court dismisses the IGY UK claims on *forum non conveniens* grounds, that possibility has not occurred and is not guaranteed to occur. Respondents' conditional willingness to submit to English jurisdiction likewise does not establish that the English court presently has jurisdiction over Respondents or control over the evidence sought.

On the present record, Respondents have not shown that Petitioner can obtain the requested evidence through the English court. Accordingly, the first Intel factor weighs in favor of Petitioner.

### 2. Nature of the Foreign Tribunal

The second Intel factor considers "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264. The Court specifically looks at whether the contemplated foreign tribunal is likely to admit the requested materials. When making this determination, the Court of Appeals has explained that courts must determine whether there exists any "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." Euromepa, 51 F.3d at 1100.

This factor weighs in favor of Petitioner. The English action is pending in the High Court of Justice, King's Bench Division, and Respondents have not identified any authoritative proof that the English court would reject evidence obtained through this § 1782 proceeding. See, e.g., In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia, No. 23-mc-00208 (JGLC)(GS), 2024 WL 555780, at *11 (Jan. 18, 2024), report and recommendation adopted, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024) (finding "no authoritative proof or specific directions from the English Court indicating a lack of receptivity to Section 1782 discovery").

Accordingly, the second Intel factor weighs in favor of Petitioner.

### 3. Attempt to Circumvent Foreign Restrictions

The third factor requires the Court to determine whether the request "conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." Intel, 542 U.S. at 265.

9

Respondents argue that Petitioner is attempting to sidestep the Delaware court's docket management because Petitioner seeks discovery here while motions to dismiss and stay discovery remain pending in the Delaware action. ECF No. 29 at 5-6. The Court is not persuaded that this amounts to circumvention. As discussed above, the overlap between the English and Delaware actions does not show that Petitioner seeks discovery for some purpose other than use in the English action. Nor does that overlap establish that Petitioner is attempting to evade any foreign or domestic proof-gathering restriction. Respondents identify no English rule that would prohibit Petitioner from obtaining or using the requested evidence. And although Respondents point to their pending Delaware motion to stay discovery, the Delaware court has not entered an order staying discovery on the IGY UK claims or otherwise barring the discovery sought here. A pending request for a stay is not a discovery restriction.

The overlap with the Delaware action may bear on burden, duplication, and the appropriate scope of discovery. But those concerns are better addressed under the fourth Intel factor and through appropriate limitations on the subpoenas. On this record, Respondents have not shown that the application is a bad-faith attempt to circumvent foreign or domestic proof-gathering restrictions. Accordingly, the third Intel factor does not weigh against granting the application, although it supports careful limitations on the scope and timing of discovery.

### 4.  Overbroad or Burdensome

The fourth Intel factor requires the district court to decide whether the discovery request is "overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees, 793 F.3d at 301. The Court must limit discovery where "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking

10

discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Further, even if a § 1782 request is overbroad, the Court may use its discretion to grant the application and limit the request. See Mees, 793 F.3d at 302 ("[T]o the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether the defect could be cured through a limited grant of discovery.").

This factor may support limiting the requested discovery but not denying the application. Petitioner seeks discovery concerning Jones's communications with Respondents, alleged payments promised or made to Jones, and Respondents' alleged expectations of Jones in connection with those payments. That discovery is relevant to the English action and proportional to Petitioner's stated need for evidence concerning Jones's alleged misconduct. At the same time, the proposed subpoenas appear to sweep beyond Jones-specific discovery. For example, Petitioner seeks documents concerning actual or proposed payments not only to Jones, but also to "other IGY employees." ECF No. 2 at 13-14. To the extent those requests are not tied to Jones or to the claims asserted in the English action, they are overbroad. I recommend directing the parties to meet and confer regarding the scope of the subpoenas, including whether and to what extent the request for documents concerning payments to "any IGY Employee" seeks materials sufficiently tied to Jones or the claims asserted in the English action.

The proposed deposition subpoenas to Farkas and Mukamal are likewise relevant to the English action, provided they are limited to Jones-related topics. Petitioner alleges that Farkas promised Jones a substantial payment tied to the earnout and that Jones concealed that promised payment while communicating improperly with Island Capital. ECF No. 2 at 9-12. Mukamal is alleged to be an Island Capital executive from whom Petitioner seeks testimony concerning the

same Jones-related communications and payments. ECF Nos. 3-2, 3-3. Testimony from Farkas and Mukamal concerning their communications with Jones, any actual or proposed payments to Jones, and their expectations of Jones therefore falls within the proper scope of discovery for use in the English action.

Respondents also argue that the requested discovery is cumulative and duplicative because IGY UK and MarineMax East have served discovery requests in the Delaware action that Respondents say seek the same materials. ECF No. 29 at 2. That overlap does not warrant denial. Respondents are not parties to the English action, the English court does not presently have jurisdiction over them, and the Delaware court has not ordered discovery on the IGY UK claims to proceed. But the overlap does counsel in favor of limiting discovery to materials that are relevant to the English action and avoiding unnecessary duplication with any discovery that may proceed in Delaware.

Respondents further object to the timing of Petitioner's proposed discovery, which would require Island Capital to produce documents within 30 days of service of the subpoena and Farkas and Mukamal to sit for depositions within 30 days after that production. ECF No. 29 at 7. That proposed schedule is not so burdensome as to warrant denial of the application. Although subpoenas to nonparties are governed by Rule 45, a 30-day period for document production tracks the ordinary time to respond to requests for production under Rule 34. See Fed. R. Civ. P. 34(b)(2)(A). Moreover, Respondents have had notice of the proposed subpoenas since this application was filed in February 2026. Respondents also have not submitted evidence quantifying the burden of compliance, identifying the volume of potentially responsive materials, or explaining why an ordinary subpoena schedule would be inadequate.

12

That said, because Respondents are nonparties to the English action and because the requested discovery overlaps with discovery sought in Delaware, I recommend that any discovery be subject to reasonable case-management limitations. The parties should be directed to meet and confer concerning search terms, custodians, the timing of production and depositions, confidentiality issues, and any other matters bearing on the scope or burden of the subpoenas before seeking further relief from the Court. Respondents should also be permitted to assert appropriate objections under Rules 26 and 45.

To the extent Respondents request that IGY UK bear the costs of responding to the subpoenas, that request should be denied at this juncture. Rule 45 requires a court compelling compliance with a subpoena to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Courts considering cost-shifting in the § 1782 context look to Rule 45. See In re Law Firms of McCourts & McGrigor Donald, No. M. 19-96 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001). But cost-shifting is a fact-specific inquiry, and Respondents have not yet shown that compliance with the narrowed subpoenas would impose significant expense. That is especially so if the Court narrows the subpoenas and directs the parties to meet and confer concerning search terms, custodians, timing, confidentiality, and any necessary protective order. Respondents have not identified the anticipated volume of responsive materials, the likely cost of collection or review, or any other concrete basis for shifting costs before that process occurs. Thus, I recommend denying Respondents' request for costs without prejudice.

Accordingly, the fourth Intel factor weighs in favor of narrowing the subpoenas but not denying the application in full. Specifically, Petitioner should be permitted to obtain discovery concerning Respondents' communications with or about Jones, any actual or proposed payments

13

to Jones, Respondents' expectations of Jones in connection with any such payment, and the alleged transmission, receipt, or use of IGY UK's confidential information involving Jones. The subpoenas should not permit discovery concerning payments or communications involving other IGY employees except to the extent those materials also concern Jones or the claims asserted in the English action.

## CONCLUSION

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure and applying the discretion afforded to the Court by the statute, I recommend that the Court GRANT the Application for an order pursuant to 28 U.S.C. § 1782. I further recommend that the Court order the parties to meet and confer regarding the scope of the subpoenas consistent with the limitations set forth above.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      August 4, 2026
            New York, New York

\*          \*          \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed.

14

15

R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Vernon S. Broderick if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Broderick. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).